O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VILMA ROMERO MULLIS, | Case No. CV 11-0542 JPR |
| Plaintiff, | MEMORANDUM OPINION AND ORDER AFFIRMING THE COMMISSIONER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | |
| Defendant. | |

## I. PROCEEDINGS

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security Disability Insurance Benefits and Supplemental Security Income ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed December 14, 2011. The Court has taken the Joint Stipulation under submission without oral argument. For the reasons stated below, the Commissioner's decision is affirmed and this action is dismissed.

## II.  BACKGROUND

Plaintiff was born on November 8, 1961. (Administrative Record ("AR") 26.) She is a native of Honduras and has limited English skills. (AR 26-27.) She obtained an eighth-grade education in Honduras. (AR 27.) Plaintiff claims to have been disabled since January 1, 1986. (AR 78, 82.) She claims that she has not worked since 1987 except "again very little in 2003." (AR 83.)

On March 2, 2007, Plaintiff filed an application for SSI. (AR 78-81.) On April 18, 2007, Plaintiff filed an application for disability insurance benefits. (AR 82-86.) After Plaintiff's applications were denied, she requested a hearing before an Administrative Law Judge ("ALJ"). (AR 53.) It was held on October 6, 2008, and Plaintiff appeared with counsel and testified on her own behalf. (AR 23-36.) On November 4, 2008, the ALJ denied Plaintiff's claims, determining that Plaintiff has the severe impairments of "headaches, back, left arm, bilateral foot and knee pain, hypothyroidism, and a depressive disorder, not otherwise specified," but that she is not disabled because she has the residual functional capacity ("RFC")[1] to perform medium work. (AR 17-21.) On November 23, 2010, the Appeals Council denied Plaintiff's request for review. (AR 1-4.) This action followed.

Plaintiff raises two disputed issues:

1.  Whether the ALJ properly rejected the opinion of Dr. David Koroshec, allegedly Plaintiff's treating physician;

2.  Whether the ALJ properly rejected as not credible

---

[1] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. 20 C.F.R. § 404.1545(a); § 416.945(a); see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

1    Plaintiff's hearing testimony.
2 (J. Stip. at 3-4.)
3 **III. STANDARD OF REVIEW**
4    Pursuant to 42 U.S.C. § 405(g), a district court may review the
5 Commissioner's decision to deny benefits.  The Commissioner's or ALJ's
6 findings and decision should be upheld if they are free from legal
7 error and are supported by substantial evidence based on the record as
8 a whole.  § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S.
9 Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d
10 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as
11 a reasonable person might accept as adequate to support a conclusion.
12 Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028,
13 1035 (9th Cir. 2007).  It is more than a scintilla but less than a
14 preponderance.  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc.
15 Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether
16 substantial evidence supports a finding, the reviewing court "must
17 review the administrative record as a whole, weighing both the
18 evidence that supports and the evidence that detracts from the
19 Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th
20 Cir. 1998).  "If the evidence can reasonably support either affirming
21 or reversing," the reviewing court "may not substitute its judgment"
22 for that of the Commissioner.  Id. at 720-21.
23 **IV.   THE EVALUATION OF DISABILITY**
24    People are "disabled" for purposes of receiving Social Security
25 benefits if they are unable to engage in any substantial gainful
26 activity owing to a severe physical or mental impairment that is
27 expected to result in death or which has lasted, or is expected to
28 last, for a continuous period of at least 12 months.  42 U.S.C.

§ 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).

    A.   <u>The Five-Step Evaluation Process</u>

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4); § 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. § 404.1520(a)(4)(i); § 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. § 404.1520(a)(4)(ii); § 416.920(a)(4)(ii). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient RFC to perform her past work; if so, the claimant is not disabled and the claim is denied. § 404.1520(a)(4)(iv); § 416.920(a)(4)(iv). The claimant has the burden of proving that she is unable to

perform past relevant work. <u>Drouin</u>, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. <u>Id.</u> If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. § 404.1520(a)(4)(iv); § 416.920(a)(4)(iv). That determination comprises the fifth and final step in the sequential analysis. § 404.1520; § 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

B.  <u>The ALJ's Application Of The Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since January 1, 1986. (AR 17.) At step two, the ALJ concluded that Plaintiff "has the following severe impairments: headaches, back, left arm, bilateral foot and knee pain, hypothyroidism, and a depressive disorder, not otherwise specified." (<u>Id.</u>) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or equals any of the impairments in the Listing. (AR 18.) At step four, the ALJ found that Plaintiff "has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c)" and that Plaintiff "can lift and carry 50 pounds occasionally and 25 pounds frequently and can sit, stand and walk for 6 hours out of an 8 hour day." (AR 19.) At step five, the ALJ found that sufficient jobs exist in the national economy that Plaintiff can perform. (AR 21.) Specifically, based on the hearing testimony of the Vocational Expert, the ALJ found that Plaintiff was capable of performing the jobs of "hand packager" and "sandwich maker." (<u>Id.</u>)

The ALJ expressly rejected the August 11, 2008, opinion of Plaintiff's alleged treating physician, Dr. David Koroshec of the BAART Clinic. Between 2007 and 2009, Plaintiff visited the BAART clinic multiple times, but she appears to have been treated almost exclusively by physician's assistant Cosmas Nwosu and nurse practitioner Emily Borkhovich. (AR 165-206, 257-83.) It is unclear whether Plaintiff was ever seen by Dr. Koroshec prior to August 11, 2008, when Dr. Koroshec completed an RFC form for Plaintiff.[2] (AR 284-87.) On that form, Dr. Koroshec left blank the questions concerning when and how often he had treated Plaintiff. (AR 284.) He also did not provide the requested diagnosis of or prognosis for Plaintiff but noted that she had the symptoms of "pain in back, shoulders, [right] knee." (AR 284.) He concluded that Plaintiff was incapable of even "low stress" work; could not sit or stand for more than five minutes at a time; could rarely lift more than 10 pounds and could never lift more than that; could never climb ladders and could rarely twist, stoop/bend, crouch, or climb stairs; and had "moderate" limitations in doing repetitive reaching, handling, and fingering. (AR 285-86.) When asked to identify all "clinical findings and objective signs" supporting his diagnosis, prognosis, and description of symptoms and resulting limitations, Dr. Koroshec wrote, "mostly subjective, difficult to grasp clinical association but is very 'real' to [patient]." (AR 284.) When asked if Plaintiff was a malingerer, Dr. Koroshec checked "no" but qualified his answer by stating "not consciously." (AR 285.)

---

[2] Plaintiff's hearing testimony regarding her visits to Dr. Koroshec's office was unclear as to whether she was treated directly by Dr. Koroshec or whether she was instead treated by members of his staff. (See AR 30-31.)

6

The ALJ found that Dr. Koroshec's opinion that Plaintiff had more severe restrictions than those found by the consultative examining doctors was not credible "because he offers no diagnosis nor any findings in support of his assessment; he does not state that he treated the claimant, but even if he did his conclusory report is at variance with the remainder of the evidentiary record and is entitled to no special weight." (AR 20.)

The ALJ also noted that during the hearing Plaintiff "did not complain of serious pain and is not using any severe pain medication" and that she "has not had any recent medical treatment, been prescribed stronger, more potent medication for her pain [or] other complaints and has not been referred to a specialist for her complaints." (Id.) Plaintiff testified at the hearing that she was not able to work because she suffers from the following ailments: "My back pain, my knee, that I don't have the strength to walk and I also have gastritis problems and low acid," and "my stomach feels like it's like I can have gas." (AR 29.) Her "throat sometimes hurts because I had a tumor on my throat and I feel like it's hurting."[3] (Id.) Plaintiff stated that she "[tries] to walk slowly" and that her son helps her with household chores, including vacuuming and cooking "when [her] hands get numb." (AR 29-30, 32.) She has problems with her equilibrium and has to "walk on one side" to keep her balance. (AR 32.) Further, she gets "very nervous" and "feel[s] like crying" when she hears police or ambulance noises, and she is afraid of elevators. (AR 32-33.)

The ALJ concluded that Plaintiff's "hearing allegations were not

---

[3] There are no laboratory or diagnostic findings in the record concerning a tumor.

credible or consistent with the credible medical evidence," and that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 20.)

The ALJ noted that on June 1, 2007, Plaintiff was evaluated by a consultative physician, Dr. Concepcion A. Enriquez, who found that Plaintiff "had a history of asthma, peptic ulcer disease, chest, back and joint pain and hypothyroidism" but did not find any abnormalities during her examination of Plaintiff other than "tenderness and mild decreased range of motion" and "recent abrasions" on the right knee and "tenderness and mild decreased range of motion on the left shoulder," with "slightly decreased" grip strength on the left. (AR 17-18.) The ALJ further noted that the consultative psychiatrist, Dr. Earnest A. Bagner, III, diagnosed Plaintiff with "depressive disorder, not otherwise specified" and found that she would have only "mild limitations" in "maintaining concentration and attention and completing simple tasks" and "a normal workweek," with "mild to moderate limitations in handling the stress and pressure inherent in the workplace." (AR 18.)

**V.   DISCUSSION**

   A.   <u>The ALJ Did Not Err In His Evaluation Of Plaintiff's Alleged Treating Physician's Opinion</u>

Reversal is not warranted based on the ALJ's alleged failure to properly evaluate Dr. Koroshec's opinion.

A treating physician's opinions are entitled to special weight because a treating physician is employed to cure and has a greater

opportunity to know and observe the patient as an individual. See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.3d 1391, 1396 (9th Cir. 1991). When the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. See, e.g., Reddick, 157 F.3d at 725.

    First, it is unclear that Dr. Koroshec was Plaintiff's treating physician. See 20 C.F.R. § 404.1502 (defining "treating source" as a medical source who "has, or has had, an ongoing treatment relationship with" the claimant); § 416.902 (same). Although Plaintiff testified that she visited Dr. Koroshec's offices once a month, her testimony is unclear as to whether she actually saw Dr. Koroshec or only other members of his staff. (AR 30-31.) The record contains no evidence that Plaintiff was treated by Dr. Koroshec directly other than on August 11, 2008, the date he filled out the form. The ALJ was entitled to give less weight to Dr. Koroshec's opinion on that basis. See Bari v. Astrue, No. CV 08-5753-MAN, 2010 WL 3750049, at *3 (C.D. Cal. Sept. 24, 2010) (upholding ALJ's rejection of physician's "check-

box form opinion[]" when "the record demonstrates that plaintiff saw [the physician] only once . . . the date the physician filled out the form").

Second, even if Dr. Koroshec is properly considered a treating physician, his opinion was unsupported by objective medical evidence in the record, and the ALJ was entitled to give less weight to his opinion. An ALJ is entitled to reject medical opinions that are "in the form of a checklist," lack "supportive objective evidence," and are contradicted by other evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2003); see also Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ "permissibly rejected [psychological evaluations] because they were check-off reports that did not contain any explanation of the bases of their conclusions").

Third, the ALJ's decision was consistent with the medical evidence in the record. (See AR 19.) Other than Dr. Koroshec's opinion, which was not supported by any clinical findings, no credible evidence in the record supports Plaintiff's claims as to her functional restrictions.[4] Plaintiff has not pointed to any such

---

[4] The only other evidence in the record supporting Plaintiff's claims as to her functional restrictions is an RFC Questionnaire form filled out by physician's assistant Nwosu after the ALJ issued his decision; it is almost word-for-word identical to the one filled out by Dr. Koroshec six months earlier. (Compare AR 284-87 with AR 289-93.) Thus, it was completed after Plaintiff learned that the ALJ had rejected Dr. Koroshec's opinion because he was not her treating doctor. As a physician's assistant, Mr. Nwosu is likely not an "acceptable" medical source under the regulations, unless he was "working closely with, and under the supervision of," a physician. See 20 C.F.R. § 404.1502; § 416.913(a); Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1234 (9th Cir. 2011) (internal quotation marks omitted) (citing Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996)). Regardless of whether Mr. Nwosu is an "acceptable" source, his opinion was a "check-box" form unsupported by medical evidence in the record and was properly rejected

additional evidence.  To the contrary, the record supports the ALJ's conclusions.  The physician's assistant and nurse practitioner who actually treated Plaintiff repeatedly indicated that Plaintiff was temporarily disabled at times but was not permanently disabled and not "potentially SSI eligible."  (See AR 182, 188, 196, 200, 205.)  Nurse Practitioner Borkhovich found that Plaintiff had a "good response" to medications.  (AR 191.)  Plaintiff's x-rays were either normal or showed only mild impairments.  (AR 215, 283.)  Plaintiff herself noted on her function report that she handles stress and changes in routine "alright."  (AR 121.)  Even Dr. Koroshec's opinion notes that Plaintiff's complaints are "mostly subjective" and that she may be malingering, albeit unconsciously.  (AR 284-85.)

    Even assuming that Dr. Koroshec was a treating physician, the ALJ was entitled to credit instead the finding of consultative physicians Drs. Enriquez and Bagner because unlike Dr. Koroshec's opinion, they were supported by the doctors' independent clinical findings and thus constituted substantial evidence upon which the ALJ could properly rely.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  Any conflict in the properly supported medical-opinion evidence was the sole province of the ALJ to resolve.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  The ALJ provided specific and legitimate reasons for rejecting Dr. Koroshec's opinion.  Moreover, impairment cannot be based on the plaintiff's subjective pain symptoms alone, and, as the ALJ found (and as Dr. Koroshec's opinion confirms), no medical signs or laboratory findings supported Dr. Koroshec's

---

for the same reasons the ALJ properly rejected Dr. Koroshec's identical opinion and credited instead the opinions of the consultative examiners, who were actual doctors.

11

opinion.  See Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating doctor's opinion properly rejected when treatment notes "provide no basis for the functional restrictions he opined should be imposed on [claimant]").

     B.    <u>The ALJ Did Not Err In His Evaluation Of Plaintiff's Credibility And Subjective Symptoms</u>

    The ALJ found that Plaintiff's subjective complaints regarding her disabilities "were not credible or consistent with the credible medical evidence" and that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [the ALJ's] residual functional capacity assessment."  (AR 20.)  Reversal is not warranted based on the ALJ's alleged failure to make proper credibility findings and properly consider Plaintiff's subjective symptoms.

    Although the medical evidence established that Plaintiff had medically determinable physical impairments that were likely to cause her some pain, the existence of some pain does not constitute a disability if it does not prevent Plaintiff from working.  See Thorn v. Schweiker, 694 F.2d 170, 171 (8th Cir. 1982) ("A showing that [claimant] had a back ailment alone would not support a finding that she was disabled unless the limitations imposed by the back ailment prevented her from engaging in substantial, gainful activity."); Hopper v. Astrue, No. CV 10-5387 RNB, 2011 U.S. Dist LEXIS 55969, at *3 (C.D. Cal. May 24, 2011) ("[T]he existence of some pain does not constitute a disability, if the claimant is not thereby prevented from working.").

    An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight."  See Weetman v. Sullivan, 877 F.2d 20, 22

12

(9th Cir. 1989); <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1986). When the ALJ finds a claimant's subjective complaints not credible, the ALJ must make specific findings that support the conclusion. <u>See</u> <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); <u>Varney v. Sec'y of Health & Human Servs.</u>, 846 F.2d 581, 584 (9th Cir. 1988) (citations omitted). Absent affirmative evidence of malingering, the ALJ must give "clear and convincing" reasons for rejecting the claimant's testimony. <u>Lester</u>, 81 F.3d at 834. If there is evidence of malingering, however, the ALJ may reject the claimant's symptom testimony by making a credibility determination stating why the testimony is unpersuasive. <u>Greger v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006). In making such a determination, the ALJ "must specifically identify what testimony is credible and what testimony undermines the claimant's complaints . . . ." <u>Id.</u> If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ did make specific findings in support of his adverse credibility determination:

> The claimant's hearing allegations were not credible or consistent with the credible medical evidence. The claimant did not report experiencing any adverse side effects from any prescribed or over the counter medication. The claimant continues to engage in normal activities of daily living and has no reported trouble with performing normal hygiene activities, meal preparation and household chores.[5] She did

---

[5] In her April 2008 SSI application, Plaintiff wrote: "I do not need help in personal care, hygiene or upkeep of a home." (AR 79.)

13

> admit to performing these chores with help from her son. She did not complain of serious pain and is not using any severe pain medication. The claimant has not had any recent medical treatment, been prescribed stronger, more potent medication for her pain [or] other complaints and has not been referred to a specialist for her complaints.

(AR 20.)

Plaintiff argues that under <u>Bunnell</u>, 947 F.2d at 345, the ALJ erroneously rejected Plaintiff's subjective pain testimony on the ground that "it lacks support in the objective medical evidence." (J. Stip. at 16.) <u>Bunnell</u> held that "once the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." 947 F.2d at 345. Plaintiff also argues that the ALJ erred in considering Plaintiff's ability to engage in daily activities as evidence of her lack of credibility. (J. Stip. at 19 (citing <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001).) The ALJ did not base his opinion "solely" on a lack of objective medical evidence corroborating the severity of Plaintiff's pain, however, nor solely on Plaintiff's ability to carry out daily activities; those were simply two of the reasons the ALJ gave. The ALJ also noted that Plaintiff "did not complain of any serious pain," had successfully received limited and conservative treatment for her complaints, and had not seen a specialist. The ALJ's reasons in total constituted appropriate bases for discounting Plaintiff's subjective symptom testimony. <u>See, e.g.</u>, <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ may infer that claimant's "response to conservative treatment

undermines [claimant's] reports regarding the disabling nature of his pain"); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on fact that only conservative treatment had been prescribed); Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995) (ALJ may properly rely on minimal medical treatment); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ may consider failure to seek treatment in evaluating credibility); Bunnell, 947 F.2d at 346 (ALJ may consider "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment"). This Court may not "second-guess" the ALJ's credibility finding simply because the evidence may have been susceptible of other interpretations more favorable to Plaintiff. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). Thus, Plaintiff's contentions do not warrant remand.

## VI. CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[6] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: January 10, 2012

_____
JEAN P. ROSENBLUTH
U.S. Magistrate Judge

---

[6] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."